UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Randy J. Behrens and Theresa M. Behrens, d/b/a Behrens' Fur Farm,

Plaintiffs,

vs. MEMORANDUM ORDER

United Vaccines, Inc., a division of Harlan Sprague Dawley, Inc.,

Defendant. Civ. No. 00-459 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 22nd day of February, 2002.

I. Introduction

This matter came before the undersigned United States Magistrate Judge, pursuant to the consent of the parties, as authorized by Title 18 U.S.C. §636(c), upon the Motion of the Defendant United Vaccines, Inc., for Summary Judgment. A Hearing on the Motions was conducted on September 12, 2001, at which time, the Plaintiffs, Randy and Theresa Behrens, appeared by Todd M. Johnson, Esq., and the Defendant appeared by Scott P. Drawe, Esq.

For reasons which follow, we grant the Defendant's Motion, except as to the Plaintiffs' express warranty, false representation, and Minnesota Consumer Fraud Act claims, which survive Summary Judgment, in part.

33

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural History

This case arises out of the Plaintiffs' use of the Defendant's vaccine in the operation of their mink ranch. In July of 1998, according to industry custom, the Plaintiffs vaccinated the majority of their mink herd against canine distemper.[1] The Defendant's vaccine, which was administered to the Plaintiffs' mink, was Biocom-DP, a "four-way mink vaccine" that "consists of two separate vaccine products." Memorandum of Law of Defendant United Vaccines, Inc. In Support of Motion for Summary Judgment ("Defendant's Brief") at 2. One part of the vaccine employs Distemink, which is a live virus "protection against distemper," and which is prepared in biscuit form. Id. The Distemink is dissolved in the second vaccine -- Biocom-P -- which is a "liquid inactivated vaccine for protection against enteritis, botulism and pseudomonas." Id. at 2. Since the Defendant's formulation combines an inactivated virus with a live virus, measures must be taken to ensure that the Formalin,[2] which is used to inactivate the virus in Biocom-P, is

[1]"Canine distemper is an infectious disease dangerous to dogs, foxes, skunks, raccoons, ferrets and mink" that is "spread on mink farms by areosolization of infected excretions from the nasal and oral cavities of the animals." Affidavit of William Wustenberg at 1-2. Distemper outbreaks "can result in mortality as high as 50% or higher, depending upon how rapidly the disease spreads, and how quickly it is detected." Id. at 2.

[2]Formalin is a "formaldehyde solution." Dorland's Illustrated (continued...)

neutralized, so that it does not inactivate the live virus in the Distemink. Id. at 7. Each batch of both vaccines is given a serial number and, at issue in this case, is Biocom-P batch PB13, which was sold to the Plaintiffs, as part of Biocom-DP serials DB19/PB13 and DB04/PB13. See, Affidavit of Roger G. Brady.

The Plaintiffs vaccinated their mink with the Biocom-DP from lot PB13 in July of 1998. See, Affidavit of Randy Behrens at 3. However, the Plaintiffs' ranch suffered a canine distemper outbreak which, ultimately, caused the Plaintiffs to lose 7,100 kits, and 850 breeder females, out of their total of 16,000 mink. Exhibit B attached to Affidavit of William Wustenberg, at 5. Due to this substantial loss, the Plaintiffs had to "pelt" their remaining herd, and cease the operation of their business in the Fall of 1999. Affidavit of Randy Behrens at 3.

All animal biotics, such as the vaccine at issue here, are regulated by the Federal Government under the Viruses, Serums, Toxin, and Analogous Products Act ("VSTA"), Title 21 U.S.C. §§151-159. Under VSTA, all vaccine products, and manufacturing sites, must be licensed by the United States Department of Agriculture

(...continued)
Medical Dictionary, 701 (29th Ed. 2000). In preparing the Biocom-DP, the Defendant "uses a Formalin compound to inactivate or kill the live components in BIOCOM-P." Memorandum of Law of Defendant United Vaccines, Inc. in Support of Motion for Summary Judgment, ("Defendant's Brief") at 7.

("USDA"). Title 21 U.S.C. §154. VSTA authorizes the Secretary of Agriculture to "make and promulgate from time to time such rules and regulations as may be necessary to prevent the preparation, sale, barter, exchange or shipment * * * of any worthless, contaminated, dangerous, or harmful virus, serum, toxin, or analogous product for use in the treatment of domestic animals." Id. Through the Animal and Plant Health Inspection Service ("APHIS"), the USDA, at 9 C.F.R. §§101-124, has promulgated Regulations which govern the licensing of animal vaccines. A party who seeks to manufacture animal vaccines must have both a valid "Veterinary Biologics Establishment License and at least one" valid "Veterinary Biological Product License." 9 C.F.R. §102.2(a).

In order to obtain a Product License from APHIS, a manufacturer must submit an "Outline of Production," which details how the product will be developed and tested, including "test reports and research data sufficient to establish purity, safety, potency, and efficacy of the product." 9 C.F.R. §102.3(b)(2)(ii). Once its Outline of Production is approved, a manufacturer is licensed to produce that biotic. 9 C.F.R. §102.5. Since the Regulations mandate that "[n]o biological product shall be released prior to the completion of tests prescribed in a filed Outline of Production," a manufacturer must test each batch of the biotic prior to its sale. 9 C.F.R. §113.1 - 113.5(a). Manufacturers are required to

report only the test results to APHIS, which is accomplished by completing Form 2008, and they are not required to furnish the raw data that was employed to calculate those results. See, 9 C.F.R §§112 - 113. A manufacturer must also submit samples of each serial, together with all packaging and accompanying inserts. Id. APHIS may then grant a license based solely upon the manufacturer's data, it may test the sample itself, or it may request and review the manufacturer's raw data. 9 C.F.R. §113.6. Only when APHIS has approved a serial, may the manufacturer sell it.

The Defendant is licensed to manufacture animal biotics, and it was, in 1989, granted a Product License to produce and sell Biocom-DP. Defendant's Brief at 5. The Defendant performed a viricidal activity test[3] on serial PB13, as required. For Biocom-P, the viricidal activity test required a comparison of titers[4] of Distemink, which had been dissolved in sterile water, with Diste-

---

[3]APHIS requires that the component parts of Biocom-DP "be tested to insure that, in combination, they were not 'viricidal'" in other words, to insure "that the killed component of the vaccine would [not] destroy or unacceptably damage the live portion of the vaccine." Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Plaintiff's Brief") at 9, (citing Affidavit of William Wustenberg).

[4]A titer is "the quantity of a substance required to produce a reaction with a given volume of another substance, or the amount of one substance required to correspond with a given amount of another substance." Dorland's Illustrated Medical Dictionary, 1845 (29th Ed. 2000). Here, the titers are quantified in terms of Logs.

mink which had been dissolved in Biocom-P. 9 C.F.R. §113.36 (c). "If the titer of the [Distemink] rehydrated with the [Biocom-P] is more than 0.7 Log below the titer of the [Distemink] rehydrated with sterile purified water, the product is unsatisfactory for use." 9 C.F.R. §113.36(d). When a test proves a product to be unsatisfactory, the Regulations allow for "one retest to rule out faulty techniques." 9 C.F.R. §113.35(e).

When the Defendant tested PB13, the titer of the Distemink, which had been dissolved in sterile water, was 3.3 Logs, and when dissolved in Biocom-P it was 3.5 Logs, or .2 Logs greater -- a result that the Defendant reported, on its Form 2008, as being "not viricidal." Defendant's Brief at 7-8. APHIS received the Form on June 29, 1998, and issued a conditional license,[5] "releas[ing] Biocom-P, serial number PB13 for sale." Affidavit of Christina Furseth, at unnumbered 3. Pursuant to a telephone order, which was also placed on June 29, 1998, the Plaintiffs were shipped 16,000 doses of Biocom-DP containing serial PB13. See, Exhibit C attached to Affidavit of Roger G. Brady.

---

[5]"In order to meet an emergency condition, limited market, local situation, or other special circumstance * * * the Administrator may * * * issue a conditional * * * License to an establishment under an expedited procedure which assures purity and safety, and a reasonable expectation of efficacy," and the "[p]reparation of products under a conditional license shall be in compliance with all applicable regulations and standards." 9 C.F.R. §102.6.

On January 6, 2000, after receiving complaints from several mink farmers, see Exhibit J, attached to Affidavit of Todd M. Johnson, the USDA directed the Defendant to "[i]mmediately stop distribution and sale" of PB13, and it quarantined the remaining inventory of any product containing that serial. Exhibit K, at TH01364, attached to Affidavit of Todd M. Johnson. In its letter to the Defendant, the USDA explained, that the viricidal activity test results "should have been reported on APHIS Form 2008 as 'NO TEST' and repeated." Id. Thus, the Plaintiffs maintain that by reporting the vaccine as being non-viricidal when, in fact, it should have reported a "No test," the Defendant "presented false information in the process of obtaining conditional approval to sell its product" and, therefore, unlawfully sold its product to the Plaintiffs. Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment ("Plaintiffs' Brief) at 2 and 10-13; see also, 9 C.F.R. §113.5(d)("When the initial or any subsequent test is declared a 'No test,' the reasons shall be reported in the test record, the results shall not be considered as final, and the test may be repeated.") After ordering the Defendant to stop distribution and sales of the PB13, the USDA attempted to correlate the Defendant's test results in its own lab. Id. at 17; see also Exhibit C, at 36, attached to Affidavit of Todd M. Johnson To this date, the USDA has never re-released PB13 for sale. Id. at 2-3.

The Plaintiffs filed this diversity action against the Defendant, claiming a breach of express warranties, a breach of implied warranties, strict liability, negligence, false representations, and a violation of Minnesota's Consumer Fraud Act. The Plaintiffs have alleged a loss in excess of one million dollars, which they attribute to the failure of the Defendant's distemper vaccine. In response, the Defendant has filed a Motion for Summary Judgment, which claims that the Plaintiffs' State law claims are preempted by Federal law.

## III. Discussion

Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed

fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992,996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

As we have noted, the Defendant urges that the Plaintiffs' State law claims are preempted by Federal law. Therefore, although we "give the benefit of all factual inferences to the plaintiff, a finding by the court that the plaintiff's claims are preempted by federal law would entitle the defendant to" Summary Judgment. Murphy v. Smithkline Beecham Animal Health Group, 898 F. Supp. 811, 813-14 (D. Kan. 1995).

A. Standard of Review. The core issue before us is whether the comprehensive Federal regulatory scheme, which has been created by VSTA, preempts the State law claims that have been asserted by the Plaintiffs. The Supremacy Clause of the Constitution directs that "the Laws of the United States * * * shall be the supreme Law of the Land." United States Constitution, Art. VI. It is elem-

ental that Federal laws can preempt State laws, and that such preemption can either be express, as when Congress explicitly states an intent to preempt, or implied, "when federal and state laws directly conflict, when state law stands as an obstacle to accomplishing the purposes of federal law, or when federal law is so pervasive that it reflects an intent to occupy a regulatory field." Symens v. Smithkline Beecham Corp., 152 F.3d 1050, 1053 (8th Cir. 1998)("Symens I"). In addition to preempting State law by its own act, Congress may also expressly, or impliedly, delegate its authority to preempt State law to a Federal Agency. City of New York v. F.C.C., 486 U.S. 57, 63-64 (1988).

In determining whether APHIS preempts the Plaintiffs' State law claims, we do not face a clean slate, for our analysis is closely guided, if not controlled, by our Court of Appeals' decision in Symens I, and its progeny. In Symens I, the Court concluded as follows:

> VSTA as construed by APHIS preempts inconsistent substantive state law "requirements" but not state common law remedies. In this situation, common law claims are **not preempted to the extent that** they seek relief for alleged violations of the federal substantive standards.
>
> * * *
>
> Plaintiffs' broadly pleaded claims are preempted to the extent that they rely upon "liability-creating-premises" that are differ-

> ent from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, purity, or labeling of [defendant's] licensed vaccines.

Symens I, supra at 1055-56.

Since the Court could not determine, on the Record presented on appeal, whether the plaintiffs' claims, in Symens I, fell within the preemptive scope of VSTA, the Court remanded the matter to the District Court for "'a careful comparison between the allegedly pre-empting federal requirement and the allegedly pre-empted state requirement to determine whether [the plaintiffs' claims] f[e]ll within the intended pre-emptive scope' of the federal regime." Symens I, supra at 1056, quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 500 (1996).

Upon remand, the District Court determined that the plaintiffs' state law claims for strict liability, for implied warranties of fitness for a particular purpose, and for merchantability, for false advertising, and for failure to warn, were preempted by VSTA, as they would impose standards upon the defendant that were different from, or in addition to, the substantive Federal standards, while the plaintiffs' claim for "fraud upon the agency" was not preempted, as it relied upon the defendant's purported violation of the APHIS regulations, but it was unsupported by sufficient facts to sustain a Jury's Verdict. See, Symens v. SmithKline Beecham Corp., Civ. No. 94-1036 (D.S.D., September 30, 1999)[at-

tached to Defendant's Reply Brief]. On subsequent appeal, the District Court's rulings were affirmed in their entirety. Symens v. SmithKline Beecham Corp., 7 Fed.Appx. 534, 2001 WL 263058 at **1 (8th Cir., March 19, 2001)(Symens II).

Given the holdings in Symens I and II, our Circuit has joined the Court of Appeals for the Seventh Circuit, three District Courts, and the Minnesota Court of Appeals, in extending the pre-emptive effect of VSTA to all State law claims which impose requirements different from, or in addition to, the requirements of the regulations that have been duly promulgated by APHIS. See, Lynnbrook Farms v. SmithKline Beecham Corp., 79 F.3d 620 (7th Cir. 1996), cert. denied, 519 U.S. 867 (1996); Cooper v. United Vaccines, Inc., 117 F. Supp.2d 864 (E.D. Wis. 2000); Garrelts v. SmithKline Beecham Corp., 943 F. Supp. 1023 (N.D. Ia. 1996), Murphy v. SmithKline Beecham Animal Health Group, 898 F. Supp. 811 (D. Kan. 1995); Brandt v. Marshall Animal Clinic, 540 N.W.2d 870 (Minn. App. 1996), rev. denied (Minn., February 9, 1996).[6] The Plaintiffs

[6]We do note, as the Court did in Garrelts v. Smithkline Beecham Corp., 943 F. Supp. 1023, 1029 n. 2 (N.D. Ia. 1996), that the Court denied a Motion for Summary Judgment without prejudice, on preemption grounds, in Stegmaier v. SmithKline Beecham Animal Health, Inc., Civ. No. 4-95-149, 1996 WL 755721 at *1 (D. Minn., August 22, 1996), but that ruling was not on the merits, and the case appears to have arisen from a "farmer's accidental self-injection of swine vaccine * * *," and not from an alleged harm to non-humans by virtue of an animal vaccine regulated by APHIS.

argue, however, that the doctrine of estoppel should preclude the Defendant's reliance upon preemption. We cannot agree.

According to the Plaintiffs, the Defendant should be estopped from asserting a preemption defense, because it was the Defendant's own misrepresentations that resulted in its product being approved by APHIS. Plaintiffs' Brief at 27-29. In support of this argument, the Plaintiffs cites National Bank of Commerce v. Dow Chemical Co., 165 F.2d 602 (8th Cir. 1999), and contend that, there, the Eighth Circuit rejected the plaintiff's estoppel claim "only because there was insufficient evidence to support such a claim." Plaintiffs' Brief, at p. 28. The Plaintiffs' reading of National Bank is plainly misguided for, in that case, the Court was concerned with the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), and the Court specifically stated that it "express[ed] no view concerning whether a defendant may be estopped from claiming FIFRA preemption when material has been withheld from the EPA in the registration process." Id. at 609 n. 10.

We have found no decision, and the Plaintiffs have drawn none to our attention, that has applied their claimed estoppel argument to APHIS preemption. Moreover, we are troubled by the Plaintiffs' repeated disclaimer of any intent to rely upon a "fraud-on-the-agency" argument -- because they pled no such claim -- while asserting the same genre of "false reporting," which is invoked in

a "fraud-on-the-agency" action. See, Plaintiffs' Brief, at p. 5. More importantly, we find an estoppel argument unavailing, for the same reasons that we have concluded, and shall subsequently explain, that certain of the Plaintiffs' other claims are foreclosed by preemption, since the application of that doctrine would impose standards different from, or in addition to, those contained in VSTA, and in APHIS's regulations. See, Footnote 11, infra. In this respect, we agree with the Court in Reutzel v. Spartan Chemical Co., 903 F. Supp. 1272, 1284 (N.D. Ia. 1995), where the Court rejected such an estoppel argument in the context of FIFRA, reasoning as follows:

> The court concludes that by enacting FIFRA, Congress determined that the FDA, and not the judiciary, has the task of insuring that insecticides, fungicides, and rodentcides [sic], are in compliance with the requirements of FIFRA. Were the court to decide that an allegation of failure to comply with agency requirements would save all state tort claims against insecticides, fungicides, and rodentcides [sic], then the provisions of FIFRA and Congressional intent would be rendered a nullity. Such a conclusion would circumvent the preemptive effect of section 136v, and Congress' intent to protect manufacturers of such materials would be severely undermined. Therefore, the court concludes that the doctrine of estoppel does not prevent Spartan Chemical from asserting FIFRA preemption.

Substituting, as appropriate, "VSTA," "APHIS," and "virus, serum, toxin, or analogous product," for "FIFRA," "FDA," and "insecti-