UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Randy J. Behrens and Theresa M. Behrens, d/b/a Behrens' Fur Farm,

Plaintiffs,

vs. ORDER

United Vaccines, Inc., a division of Harlan Sprague Dawley, Inc.,

Defendant. Civ. No. 00-459 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 23rd day of July, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 18 U.S.C. §636(c), upon the Motion of the Defendant United Vaccines, Inc., for a Partial Summary Judgment which seeks the dismissal of the Plaintiffs' claim under Minnesota's Consumer Fraud Act ("CFA"), Minnesota Statutes Section Sections 325F.68-70, as implemented by Minnesota's Private Attorney General Statute ("Private AG Statute") Minnesota Statutes Section 8.31, Subdivision 3a.[1]

---

[1]At the time of the Hearing, the Defendant stated that it was not seeking Summary Judgment on the Consumer Fraud Act ("CFA") claim, in and of itself, but only to the Plaintiffs' claim for attorney fees arising from their CFA claim, as allowed by Minnesota's (continued...)

(48)

FILED JUL 23 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

A Hearing on the Motions was conducted on May 16, 2002, at which time, the Plaintiffs, Randy and Theresa Behrens, appeared by Todd M. Johnson, Esq., and the Defendant appeared by Timothy J. Fetterly, Esq. For reasons which follow, we grant the Defendant's Motion.

II. Factual and Procedural History

The Plaintiffs commenced this action in February of 2000, asserting claims of strict liability, negligence, false representation, breach of express and implied warranty, and a violation of the CFA against the Defendant, based upon the alleged failure of the Defendant's BIOCOM-DP vaccine, serial PB-13, to innoculate their mink against canine distemper. Subsequently, the Defendant brought a Motion for Summary Judgment, which urged that each of the Plaintiffs' claims was preempted by the Viruses, Serums, Toxin, and Analogous Products Act ("VSTA"), Title 21 U.S.C. §§151-159. On February 22, 2002, we issued our Order, which granted the Defen-

(...continued)
Private Attorney General Statute ("Private AG Statute"). See, Minnesota Statutes Section 8.31, Subdivision 3a; Minnesota Statues Section Sections 325F.68-70. However, as explained more fully in the text of this Order, absent the authority of the Private AG Statute, a claimant cannot state a claim under the CFA. Therefore, in the event that the Plaintiffs cannot satisfy the requirements of the Private AG Statute for the purposes of an attorneys' fee claim, they will likewise be unable to satisfy its requirements for the purpose of pursuing a claim under the CFA. Therefore, we are caused to consider this Motion, in the form that it was originally submitted, as a Motion to dismiss the CFA claim in its entirety.

dant's Motion as to the Plaintiffs' strict liability, negligence, and breach of implied warranty claims.

In support of their claims for a breach of express warranty, for false representation, and for the purported violation of the CFA, the Plaintiffs have alleged that they had purchased the Defendant's product in reliance upon representations made by the Defendant's agent, to the Plaintiffs and other mink farmers, that the Defendant's vaccine was "95 percent effective in preventing distemper in mink." Complaint, at 2, 5. In addition, the Plaintiffs alleged that they had "purchased and used the distemper vaccine in reasonable reliance upon material representations of facts and warranties made by defendant on the package label and insert, which included representations that the distemper vaccine 'aids in preventing distemper' and 'BIOCOM-DP has been demonstrated to be a safe and efficacious aid in preventing distemper.'" Id. at p. 2-3. We held that the portions of their claim, which were based on the labeling of the product itself, were preempted by VSTA, but those portions which were based on representations about the product's efficacy, and which were made by the Defendant's agent, were not preempted.

Now the Defendant has returned, seeking a Partial Summary Judgment on the Plaintiffs' claims under the CFA, as implemented by the Private AG Statute. The Defendant contends that the Plaintiffs

have not satisfied the prequisites for advancing a claim under the Private AG Statute, because their claim fails to provide the requisite public benefit essential to such a prosecution.

## III. Discussion

The Defendant argues that the Plaintiffs cannot maintain their CFA claim, or their claim for attorneys' fees under the Private AG Statute, because a successful resolution of the Plaintiff's claim would not benefit the public, as required by the Private AG Statute. The Plaintiffs contend, however, that, since BIOCOM-DP remains on the market, the successful resolution of their CFA claim "w[ould] have a clear public benefit in halting deceptive public pronouncements and advertising regarding defendant's product." Memorandum of Law in Opposition to Motion for Partial Summary Judgment, at 2.[2]

---

[2]At the Hearing, the Plaintiffs questioned, for the first time, the timeliness of the Defendant's Motion. When asked why they had not previously raised this objection, counsel for the Plaintiffs stated that he had been led to believe, by statements made during the Rule 16 Status Conference, that we would hear the Defendant's Motion regardless of its timing, because we were faced with a similar issue in a Motion to Amend the Complaint brought by the plaintiff in the paralleling action of Newman v. United Vaccines Inc., Civ. No. 00-257. We informed the Plaintiffs that it had not been our intention to foreclose them from objecting to the timing of the Motion, but that, as a practical matter, we would be faced with the Defendant's effort to eliminate these claims at some point in the course of this litigation and, if we could summarily resolve the issue as a matter of law, we would be inclined to do so. Having heard no further objection to our consideration of the

(continued...)

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d

---

(...continued)
Motion on procedural grounds, and finding good cause to do so, we analyze the Defendant's Motion on its substance.

992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992,996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole

Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. The crux of the argument presented is the Defendant's contention that, while the transaction between the Defendant and the Plaintiffs might be covered by the CFA's protections, the Plaintiffs cannot bring that claim because the Statute which provides authority for the commencement of a CFA claim -- the Private AG Statute -- requires that the action effect a broader, public benefit. The Plaintiffs, on the other hand, urge that because BIOCOM-DP -- albeit not PB13, the particular serial of the product alleged to have harmed the Plaintiffs -- remains on the market, the success of this lawsuit would advance a public benefit, in that it would prohibit further deceptive advertising concerning BIOCOM-DP's efficacy.

Of course, "[i]n interpreting a state statute, a federal court is bound by the construction given the statute by the highest court within the state." Slaaten v. Cliff's Drilling Co., 748 F.2d 1275, 1276 (8th Cir. 1984), citing Senn v. Tile Layers Protective Union, 301 U.S. 468 (1937); Yoder v. Nu-Enamel Corp., 117 F.2d 488, 489 (8th Cir. 1941). Therefore, we turn to Ly v. Nystrom, 615 N.W.2d 302 (Minn. 2000), in which the Minnesota Supreme Court considered whether a claim could be brought for a one-on-one transaction under

the CFA and, if so, whether it could support a claim for attorney's fees under the Private AG statute. The Court's analysis commenced with a discussion of the purpose behind the CFA, noting that it was adopted to "prohibit deceptive practices and to address the unequal bargaining power often present in consumer transactions," and was designed to "provide[] the attorney general with the authority to seek and obtain injunctive relief to protect consumers from unlawful and fraudulent trade practices in the marketplace." Id. at 308, citing State v. Philip Morris, Inc., 551 N.W.2d 490, 496 (Minn. 1996). After concluding that the CFA covered the transaction at issue in that case, the Court turned to a consideration of the Private AG Statute.

The Court determined that, under Minnesota Statute Section 8.31, the Attorney General was provided the authority to seek injunctive relief, and civil penalties, on behalf of the State, "regarding unlawful business practices barred by a variety of statutory prohibitions, including the [CFA]." In addition, the Private AG Statute, Minnesota Statutes Section 8.31, Subdivision 3a, "provide[d] that 'any person injured by a violation' of the laws entrusted to the attorney general to investigate and enforce," including the CFA, "may recover damages together with costs and attorney fees." Id. at 310. Thus, the Private AG Statute was the measure that instilled authority, in individual consumers, to bring

actions under the CFA. However, the Court noted that some concern had been raised about the scope of the Private AG Statute, and "particularly as it relate[d] to common law fraud actions and the recovery of attorney fees." Id. at 311. In addressing that concern, the Court related that the purpose of the Statute was to "provid[e] incentives to injured parties to enforce the unlawful business practices statutes as a substitute for the attorney general," as it was "simply impossible for the Attorney General's Office to investigate and prosecute every act of consumer fraud in th[e] state." Id., citing Hearing on S.F. 819, S. Comm. Labor and Commerce, 68th Minn. Leg., March 8, 1973, (audiotaped comments of Sen. Borden, Senate sponsor of the Bill).

The Court also noted, however, that, due to the limited purpose of the Private AG Statute, the Minnesota Courts of Appeal had "expressed reservations about broadening the scope of" the Private AG Statute, and "ha[d] required a showing of public benefit" as a predicate to an award of attorney fees under that Statute. Id. In particular, the Court of Appeals had warned, that Courts "must take into account the degree to which the public interest is advanced by the suit, * * * otherwise 'every artful counsel could dress up his dog bite case' to come under the attorney's fees statute." Lies v. Lindemyer, 354 N.W.2d 556, 558 (Minn.App. 1984), quoting, Boland v. City of Rapid City, 315 N.W.2d 496, 503 (S.D. 1982); see also Wex-

ler v. Brothers Entertainment Group, 457 N.W.2d 218, 222-23 (Minn. App. 1990).

The Court recognized that, in determining the proper scope of the authority granted by the Private AG Statute, it had to base its assessment on the fact that the Statute had been originally adopted "as part of the statutory charter for the duties and responsibilities of the attorney general." Since the private litigant would be acting in lieu of the Attorney General, the scope of the Attorney General's roles and duties, would properly define the scope of the private litigant's roles and duties. Under Minnesota Statute Section 8.01, the Attorney General was to "appear for the state in civil lawsuits 'whenever, in the attorney general's opinion, the interests of the state require it.'" Id. Conversely then, the Attorney General, and the private litigant, who is acting in the Attorney General's stead, cannot act "to protect private or individual interests independent of the public purpose." Id.

In finding a public benefit requirement, the Court reasoned, in part, as follows:

> [T]he legislature could not have intended to sweep every private dispute based on fraud, and falling within the CFA, into a statute where attorney fees and additional costs and expenses would be awarded, because to do so would substantially alter a fundamental principle of law deeply ingrained in our common law jurisprudence -- that each party bears his

> own attorney fees in the absence of a statutory or contractual exception.

Id. at 314.

Ultimately, the Court held that "the Private AG Statute applie[d] only to those claimants who demonstrate that their cause of action benefits the public." Id. at 314.

Here, the Defendant argues that the Plaintiffs cannot meet this requirement, because their claim seeks redress for an essentially personal injury -- the injury to their business -- and therefore, their action does not promote a public benefit. In addition, the Defendant insists that the vaccine at issue here -- PB13 -- has been "pulled from the market by the applicable government agency," and thus, even if the vaccine was found to be defective in some manner, it "could cause no harm to any other member of the public." Memorandum of Law in Support of Partial Summary Judgment, at 7. In response, the Plaintiffs maintain that the product at issue is BIOCOM-DP, and not merely the serial that they actually purchased, because the representations, which form the basis of their remaining claims, related to the product as a whole. Since only certain serials of the product have remained off-the-market, as a result of the hold put on their sale by the United States Department of Agriculture ("USDA"), the Plaintiffs insist that, if successful, their lawsuit could prevent false or mislead-

ing advertising, as to BIOCOM-DP in general, which would be a public benefit.

In support of their argument, the Plaintiffs cite Collins v. Minnesota School of Business, Inc., 636 N.W.2d 816 (Minn.App. 2001), in which the Minnesota Court of Appeals applied the public benefit requirement, which was enunciated in Ly v. Nystrom, to former students of a school, who sued for damages arising from their enrollment in a particular program, and who claimed that they had been induced to enroll in that program by a false and misleading advertisement. The parties settled the case, and then the plaintiffs sought an award of costs and fees, including attorney fees, under the Private AG Statute. The State District Court denied the plaintiffs' Motion for fees under the Statute, finding that their suit did not benefit the public as required. Id. at 820. However, the Court of Appeals disagreed. It related that the defendant had "promoted its sports-medicine-technician program through television advertisements and sales presentations," and that, "[a]s a result of [the] lawsuit, [it] had stopped its television advertisements, and changed the program's name and curriculum." Id. The Court noted "that federal courts ha[d] consistently held that the prevention of false or misleading advertising is a public benefit" and, applying that principal to the circumstances before it, where the defendant had "advertised its program to the

public at large," it concluded that, "[b]ut for the appellants' lawsuit, an indefinite class of potential consumers might have been injured in the same manner as were appellants." Id. at 821.

The Plaintiffs contend that their case is factually similar to the facts presented in Collins, because they were induced into purchasing the Defendant's product by the representations of the Defendant's agent which, they allege, were false and misleading to the public at large. According to the Plaintiffs, just as in Collins, their lawsuit will aid an "indefinite class of potential consumers," who might otherwise be "injured in the same manner" as they were. Id. at 821. The Defendant counters, however, that, since the Plaintiffs' lawsuit post-dated the removal, by the USDA, of their serial from the marketplace, the Plaintiffs cannot responsibly contend, as did the plaintiffs in Collins, that, "but for" their lawsuit, the Defendant would have continued to make false representations about that product to the public's disadvantage.

In addition, the Defendant maintains that the only product, that is here at issue, is PB13, and that the Defendant's sale, and advertising, of any other serial of BIOCOM-DP is irrelevant, and that, in any event, the Plaintiff lacks standing to pursue a claim as to any product other than the one that they have alleged as causing them damage. Lastly, the Defendant urges that the Plaintiffs are incorrect in asserting that BIOCOM-DP remains on the mar-

ket. While the Defendant admits that it was granted a one-time exception, so as to release certain serials of BIOCOM-DP in July of 2001, they represent that all other BIOCOM-DP serials have remained off the market.

While we understand the Plaintiffs' argument, that there might be some benefit to the public occasioned by their success in this action, we cannot agree that such a metaphysical potential is sufficient to satisfy the public benefit requirement enunciated in Ly v. Nystrom. To be sure, the loss of any false advertising claim might counsel the advertiser to be more forthright in its advertisement of its other products, we see no real prospect of a public benefit, other than a theoretical one. In this respect, in Transclean Corp. v. Bridgewood Services, Inc., 134 F. Supp.2d 1049, 1054 (D. Minn. 2001), aff'd in relevant part, 290 F.3d 1364, 1379 (Fed. Cir. 2002), we determined that, notwithstanding the plaintiff's request for injunctive relief, it was not entitled to attorneys' fees, under the Private AG Statute, as the plaintiff was implicated in the same type of "false advertising," of which it accused the defendant, and because the plaintiff did not seek to prevent the successor to the defendant, who was paying a royalty to the plaintiff, from continuing with the same advertising. While we did not consider the precise issue raised here, under the CFA, as, in Transclean, the plaintiff sought injunctive relief to prevent false

advertising that could damage other consumers in the public, in practical effect, we construed the Private AG Statute as precluding a claim for attorneys' fees, since the plaintiff, under the circumstances there, was unable to demonstrate any public benefit which warranted an award of fees.

More recently, the CFA was construed by the Court, in Pecarina v. Tokai Corporation, 2002 WL 1023153 (D. Minn., May 20, 2002). There, the plaintiff commenced an action against the manufacturers, distributors, and sellers of a lighter, which had been employed by her children to start an injury-causing fire. After reviewing the public benefit requirement, that was announced in Ly v. Nystrom, as well as the reasoning behind that decision, the Court found that the plaintiff had failed to demonstrate the requisite public interest. In so holding, the Court noted that the plaintiffs were seeking "damages for past and future medical expenses, pain and suffering, wage loss, and emotional distress," which evidenced that the "the essence of Plaintiff's lawsuit [was] personal injury, involving allegations of negligence and products liability." Id. at *5. The Court concluded that, as those claims were meant to redress only the plaintiff's personal injuries, they did "not benefit the public." Id. Given the caveat voiced in Ly v. Nystrom, that "Plaintiffs may not craft their products liability suit to bring it

within the ambit of the Private AG" Statute, the Court dismissed the plaintiff's CFA claim. Id.

For reasons we expressed in Transclean, we concur with that interpretation of the public benefit requirement. In reaching its decision, in Pecarina, the Court focused on the nature of the claims that were brought by the plaintiffs, and we believe such a focus is correct. Undoubtedly, any successful lawsuit, which recovers damages for an injury caused by a defective product, could have the potential to cause some public benefit. However, such a broad application of the Private AG Statute, to effect the purposes of CFA, was the precise type of misapplication that the Minnesota Supreme Court criticized in Ly v. Nystrom, supra at 312, when it warned that, unless the Private AG Statute was interpreted within its proper scope, "'every artful counsel could dress up his dog bite case' to come under an attorney's fees statute." As the Court observed, such a broad application would "substantially alter a fundamental principle of law deeply ingrained in our common law jurisprudence -- that each party bears his own attorney fees in the absence of a statutory or contractual exception." Id. at 314.

In view of these precepts, we conclude that, as pled, the Plaintiffs have failed "to demonstrate that their cause of action benefits the public." Id. The Plaintiffs' claims seek to redress only their own personal, business damages. They seek no equitable

relief -- they do not request any future injunction on the Defendant's advertising, nor any injunction on the Defendant's marketing of any other BIOCOM-DP serial. Rather, the seek monetary compensation for what are, in every respect, personal and not public losses. In the event that the Plaintiffs were successful in such a CFA claim, and could show that the Defendant's representations were false and misleading, their success would have no direct impact on the Defendant's ability to represent the efficacy of any other BIOCOM-DP serial, other than the one at issue here -- a serial that was removed from the marketplace by the act of a Federal Agency, and not as a result of the Plaintiffs' suit. Under the governing law, the Plaintiffs are not entitled to employ the Private AG Statute as the vehicle to litigate a CFA claim, and therefore, they may not seek attorneys' fees as to a claim they may not litigate. In short, as pled by the Plaintiffs, their CFA claim is not an action that could properly have been pursued by the Minnesota Attorney General, and consequently, they may not pursue the claim in the Attorney General's stead.

NOW, THEREFORE, It is --

ORDERED:

That the Defendant's Motion for Partial Summary Judgment [Docket No. 40] is GRANTED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE